IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHAEL J. KRIZ,<br><br>        Plaintiff,<br><br>vs.<br><br>DR. SANAT K. ROY, Psychiatrist;<br>DR. SHANNON BLACK, Psychologist;<br>TERRY CURTIS, Box Butte County<br>Attorney; and JEAN RHODES,<br>Chairman, Box Butte County Mental<br>Health Board,<br><br>        Defendants. | 8:20CV110<br><br><br>**MEMORANDUM<br>AND ORDER** |

    Plaintiff, Michael J. Kriz ("Kriz"), filed this action on March 24, 2020, and has since been granted leave to proceed in forma pauperis. The court now conducts an initial review of Kriz's Complaint (Filing 1) to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

    Kriz alleges he was civilly committed to the Lincoln Regional Center ("LRC") in 1992 by the Box Butte County Mental Health Board. Kriz claims his constitutional rights are being violated because he is no longer mentally ill and dangerous, and does not require inpatient treatment. Kriz requests a court order directing that he be discharged from LRC to an outpatient treatment setting.

    The court takes judicial notice that Kriz filed a similar action 15 years ago,[1] which the court allowed to proceed to service of process. *See* Case No. 4:05CV3254,

---

[1] The court can sua sponte take judicial notice of its own records and files, and facts which are part of its public records. *United States v. Jackson*, 640 F.2d 614,

Order on Initial Review (Filing 9) entered December 5, 2005.² Named as defendants in that action were the county mental health board and Dr. Sanat K. Roy, who, at the time, was employed by the Nebraska Department of Health and Human Services as a psychiatrist at LRC and was in charge of the Sex Offender Services Program there. The board was dismissed from the action because of quasi-judicial immunity, and the action proceeded against Dr. Roy in his individual and official capacities for money damages and prospective injunctive relief.³ *See id.*, Memorandum and Order (Filing 87) entered on June 25, 2008 (*Kriz v. 12th Judicial Dist. Bd. of Mental Health of Box Butte Cty.*, No. 4:05CV3254, 2008 WL 2568270 (D. Neb. June 25, 2008)). The action subsequently was dismissed on a motion for summary judgment filed by Dr. Roy. *See id.*, Memorandum and Order (Filing 118) entered on February 5, 2009 (*Kriz v. Roy*, No. 4:05CV3254, 2009 WL 277565 (D. Neb. Feb. 5, 2009)).

II. STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

---

617 (8th Cir. 1981). Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it. *Id.*

² Kriz also filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, which action was dismissed for failure to exhaust state court remedies. *See* Case No. 4:05CV3255, Memorandum and Order (Filing 24) entered May 17, 2006.

³ Counsel was appointed to represent Plaintiff prior to discovery. *See* Case No. 4:05CV3254, Memorandum and Order (Filing 35) entered September 6, 2006.

2

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III. ANALYSIS

Liberally construing Kriz's Complaint, this is a civil rights action brought under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Kriz alleges that Defendants have violated his "constitutional right to be free from cruel and unusual punishment" by keeping him confined as an inpatient at LRC and denying him the "right to be treated in the least restrictive treatment setting and environment." (Filing 1 at 4.) The Eighth Amendment to the Constitution prohibits the infliction of cruel and unusual punishment, and applies to the states through the Due Process Clause of the Fourteenth Amendment. *Baze v. Rees*, 553 U.S. 35, 47 (2008). "However, because an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply." *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004). "The rights of patients in psychiatric hospitals more appropriately arise under the Fourteenth Amendment." *Id.*

The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. "This clause has two components: the procedural due process and the substantive due process components." *Singleton v. Cecil,* 176 F.3d 419, 424 (8th Cir. 1999) (en banc) (citing *Cnty. of Sacramento v.*

3

*Lewis,* 523 U.S. 833 (1998)). "Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated, and the possession of a protected life, liberty, or property interest is a condition precedent to any due process claim." *Id.* (cleaned up).

In *Youngberg v. Romeo,* 457 U.S. 307 (1982), the Supreme Court considered "for the first time the substantive rights of involuntarily committed mentally retarded persons under the Fourteenth Amendment to the Constitution." *Id.* at 314. The Court concluded that committed individuals "enjoy constitutionally protected [liberty] interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests."[4] *Id.* at 324. "In determining whether the State has met its obligations in these respects, decisions made by the appropriate professional are entitled to a presumption of correctness." *Id.*

The prevailing view, however, is that there is no general federal constitutional right to a least restrictive environment. *See Kulak v. City of New York*, 88 F.3d 63, 73 (2d Cir. 1996) (citing *Society for Good Will to Retarded Children, Inc. v. Cuomo,* 737 F.2d 1239, 1247-49 (2d Cir. 1984)); *P.C. v. McLaughlin*, 913 F.2d 1033, 1042 (2d Cir. 1990) ("The Constitution does not guarantee a mentally retarded person the right to live in the community of his choice or in the least restrictive environment."). *Accord*, *Lelsz v. Kavanagh*, 807 F.2d 1243, 1251 (5th Cir. 1987) ("[T]he federal constitution does not confer … a right to habilitation in the least restrictive

---

[4] "Romeo, the civilly committed resident in *Youngberg,* was a thirty-three-year-old man with the mental capacity of an eighteen-month-old child. He was not committed because he posed any particular danger to the community but because of his severe retardation. Romeo had sustained injuries numerous times during his commitment, some self-inflicted and some from residents reacting to his aggressive behavior. To prevent Romeo from harming himself or other residents, he occasionally had been restrained with soft arm shackles. Romeo['s guardian] argued that training programs aimed at his self-control and interaction problems would have lessened the need for these restraints." *Bailey v. Gardebring*, 940 F.2d 1150, 1154 (8th Cir. 1991) (distinguishing *Youngberg* and holding that a dangerous psychopath, civilly committed for purposes of safekeeping, did not have a constitutional right to psychiatric treatment to overcome a "sexual offender condition").

environment."); *Rennie v. Klein*, 720 F.2d 266, 268, 271 (3d Cir. 1983) (en banc) (plurality and concurring opinions) (acknowledging that Supreme Court declined to adopt a "least intrusive means" analysis in *Youngberg*). *See also Conner v. Branstad*, 839 F. Supp. 1346, 1351 (S.D. Iowa 1993) ("Following the Supreme Court's decision in *Youngberg,* several circuits have uniformly concluded that there is no federal right to treatment in the least restrictive setting."); *Gieseking v. Schafer*, 672 F. Supp. 1249, 1266 (W.D. Mo. 1987) ("[T]he courts have uniformly rejected the notion that mentally retarded and developmentally disabled individuals have a constitutionally-founded right to receive treatment in the least restrictive alternative."); *Ass'n for Retarded Citizens of N. Dakota v. Olson*, 561 F. Supp. 473, 486 (D.N.D. 1982) ("Prior to the *Youngberg* decision, this court held that the fourteenth amendment secures a right to the least restrictive practicable alternatives to institutionalization. While the *Youngberg* decision does not directly address this specific right, the Court's analysis indicates that it would reject an absolute right to the least restrictive alternatives." (citations omitted)), *aff'd on other grounds*, 713 F.2d 1384 (8th Cir. 1983).

"[A] state may create such a liberty interest protected under the Fourteenth Amendment by regulations, statutes, or court orders 'mandatory in character.'" *Kulak*, 88 F.3d at 73 (quoting *Washington v. Harper,* 494 U.S. 210, 221 (1990)). Importantly, however, these state-created liberty interests are only "entitled to the *procedural* protections of the Due Process Clause of the Fourteenth Amendment." *Vitek v. Jones*, 445 U.S. 480, 488 (1980) (emphasis added). "A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures." *Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998). Kriz does not claim that he has been denied procedural due process.[5]

---

[5] Nebraska's civil commitment statute provides that "[a] treatment order by the mental health board … shall represent the appropriate available treatment alternative that imposes the least possible restraint upon the liberty of the subject," and specifies that "[i]npatient hospitalization or custody shall only be considered as a treatment alternative of last resort." Neb. Rev. Stat. Ann. § 71-925(6) (Westlaw 2020). The law further directs that "[t]he person or entity designated by the mental health board … to prepare and oversee the [civilly committed] subject's

5

The United States Court of Appeals for the Eighth Circuit has not specifically addressed the "least restrictive environment" question, but has "held that although 'the Supreme Court has recognized a substantive due process right to reasonably safe custodial conditions, [it has not recognized] a broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement.'" *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) (alteration in original; quoting *Elizabeth M. v. Montenez,* 458 F.3d 779, 788 (8th Cir. 2006)). In *Strutton*, a civilly committed sex offender brought a civil rights action challenging the adequacy of his treatment after budget cuts resulted in the temporary elimination of psychoeducational classes and cutbacks for process group sessions. The Eighth Circuit agreed with the district court that *Youngberg*'s "professional judgment" standard did not apply in this situation— because Strutton did not have a fundamental due process right to sex offender treatment—and that the applicable standard was whether the challenged state action was "so arbitrary or egregious as to shock the conscience." The Court explained:

---

individualized treatment plan shall submit periodic reports to the mental health board of the subject's progress under such plan and any modifications to the plan." Neb. Rev. Stat. Ann. § 71-932 (Westlaw 2020). "Upon the filing of a periodic report under section 71-932, the subject, the subject's counsel, or the subject's legal guardian or conservator, if any, may request and shall be entitled to a review hearing by the mental health board and to seek from the board an order of discharge from commitment or a change in treatment ordered by the board." Neb. Rev. Stat. Ann. § 71-935(1) (Westlaw 2020). "The board shall immediately discharge the subject or enter a new treatment order with respect to the subject whenever it is shown by any person or it appears upon the record of the periodic reports filed under section 71-932 to the satisfaction of the board that (a) cause no longer exists for the care or treatment of the subject or (b) a less restrictive treatment alternative exists for the subject. When discharge or a change in disposition is in issue, due process protections afforded under the Nebraska Mental Health Commitment Act shall attach to the subject." Neb. Rev. Stat. Ann. § 71-935(2) (Westlaw 2020). The denial of a motion for reconsideration under § 71-935(1) is a final, appealable order. *See In re D.I.,* 799 N.W.2d 664, 670 (Neb. 2011) (construing nearly identical provision of Nebraska's Sex Offender Commitment Act, Neb. Rev. Stat. § 71-1219(1) (Reissue 2009)). Kriz does not allege that he has sought a review hearing by the mental health board to obtain a change in treatment.

6

> Strutton's due process claim originates from the state statutory mandate to provide for Strutton's confinement "for control, care and treatment until such time as [his] mental abnormality has so changed that [he] is safe to be at large." Mo.Rev.Stat. § 632.495(2). We remain cautious not to turn every alleged state law violation into a constitutional claim. Only in the rare situation when the state action is "truly egregious and extraordinary" will a substantive due process claim arise. *See Chesterfield Dev. Corp. v. City of Chesterfield,* 963 F.2d 1102, 1104-05 (8th Cir. 1992). This is why the district court properly analyzed Strutton's claims to determine whether the state action of eliminating the psychoeducational classes and modifying the process groups was so arbitrary or egregious as to shock the conscience. *See United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty.'" (quoting *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952) and *Palko v. Connecticut,* 302 U.S. 319, 325–326, 58 S.Ct. 149, 82 L.Ed. 288 (1937))).

*Id.* at 557-58.

More recently, in *Karsjens v. Piper*, 845 F.3d 394 (8th Cir. 2017), the Court of Appeals reviewed a § 1983 class-action that was brought by civilly committed sex offenders who claimed their substantive due process rights were violated by Minnesota's Civil Commitment and Treatment Act and by the actions and practices of the managers of the Minnesota Sex Offender Program (MSOP). The district court had determined that the Act was unconstitutional as applied for six reasons:

> (1) Defendants do not conduct periodic independent risk assessments or otherwise evaluate whether an individual continues to meet the initial commitment criteria or the discharge criteria if an individual does not file a petition; (2) those risk assessments that have been performed have not all been performed in a constitutional manner; (3) individuals have remained confined at the MSOP even though they have completed treatment or sufficiently reduced their risk; (4) discharge procedures are not working properly at the MSOP; (5) although section 253D expressly allows the referral of committed

> individuals to less restrictive alternatives, this is not occurring in practice because there are insufficient less restrictive alternatives available for transfer and no less restrictive alternatives available for initial commitment; and (6) although treatment has been made available, the treatment program's structure has been an institutional failure and there is no meaningful relationship between the treatment program and an end to indefinite detention.

*Id.* at 402-03. The Court of Appeals ruled that the district court had applied an incorrect standard in considering the class plaintiffs' as-applied substantive due process claims, stating:

> When it considered the proper standard to apply, the district court stated substantive due process protected against two types of government action: action that shocks the conscience or action that interferes with rights implicit in the concept of ordered liberty. The district court then proceeded to discuss how the state defendants' actions interfered with the class plaintiffs' liberty interests to be free from restraint and thus was subject to a strict scrutiny analysis. The district court applied the improper standard to consider an as-applied challenge when it determined there were two types of government action that could violate the class plaintiffs' substantive due process rights.
>
> Following the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), this court held to prevail on an as-applied due process claim, that the state defendants' actions violated the plaintiffs' substantive due process rights, the plaintiffs "must demonstrate *both* that the [state defendants'] conduct was conscience-shocking, *and* that the [state defendants] violated one or more fundamental rights that are 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Moran v. Clarke*, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring and writing for a majority on this issue) (emphasis in original) (quoting *Glucksberg*, 521 U.S. at 720–21, 117 S.Ct. 2258 (1997)). The district court, citing to a pre-*Lewis* decision of *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), used the former disjunctive standard and focused

> only on whether there was a fundamental right at issue, and having determined that there was a fundamental right at issue, the district court applied a strict scrutiny test to both the facial and as-applied challenges.
>
> As indicated above, however, the court should determine both whether the state defendants' actions were conscience-shocking and if those actions violated a fundamental liberty interest. To determine if the actions were conscience-shocking, the district court should consider whether the state defendants' actions were "egregious or outrageous." *See Montin v. Gibson*, 718 F.3d 752, 755 (8th Cir. 2013) (quoting *Burton v. Richmond*, 370 F.3d 723, 729 (8th Cir. 2004)). To meet this high standard, we have explained that the alleged substantive due process violations must involve conduct "so severe ... so disproportionate to the need presented, and ... so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Moran*, 296 F.3d at 647 (quoting *In re Scott Cnty. Master Docket*, 672 F.Supp. 1152, 1166 (D. Minn. 1987)). Accordingly, the district court applied an incorrect standard in considering the class plaintiffs' as-applied substantive due process claims.

*Id.* at 408. The Court of Appeals did not specifically address whether any of the six grounds upon which the district court ruled in favor of the class plaintiffs involved the infringement of a protected liberty interest, but again noted the limited extent of the Supreme Court's decision in *Youngberg* before "nevertheless" concluding there was no conscience-shocking conduct by Defendants:

> [W]e have previously held that although "the Supreme Court has recognized a substantive due process right to reasonably safe custodial conditions, [it has not recognized] a broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement." *See Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) (alteration in original) (quoting *Elizabeth M. v. Montenez*, 458 F.3d 779, 788 (8th Cir. 2006)). Further, as the Supreme Court recognized, the Constitution does not prevent "a State from civilly detaining those for whom no treatment is available." [*Kansas v. Hendricks*, 521 U.S. 346, 366, 117

9

> S.Ct. 2072, 138 L.Ed.2d 501 (1997)]. Nevertheless, as discussed previously, to maintain an as-applied due process challenge, the class plaintiffs have the burden of showing the state actors' actions were conscience-shocking and violate a fundamental liberty interest. *See Moran*, 296 F.3d at 651.
>
> None of the six grounds upon which the district court determined the state defendants violated the class plaintiffs' substantive due process rights in an as-applied context satisfy the conscience-shocking standard. Having reviewed these grounds and the record on appeal, we conclude that the class plaintiffs have failed to demonstrate that any of the identified actions of the state defendants or arguable shortcomings in the MSOP were egregious, malicious, or sadistic as is necessary to meet the conscience-shocking standard. Accordingly, we deny the claims of an as-applied due process violation.

*Id.* at 410-11.

Even more recently, in *Van Orden v. Stringer*, 937 F.3d 1162 (8th Cir. 2019), *cert. denied sub nom. Orden v. Stringer*, 140 S. Ct. 1146 (2020), the Eighth Circuit reviewed a § 1983 class action brought by civilly committed sex offenders who claimed that the Missouri Sexually Violent Predator Act, as applied to them, violated their substantive due process rights. The district court initially ruled that plaintiffs' constitutional rights had been violated, for three reasons:

> First, the court found that "annual reviewers have not been applying the correct legal standard when evaluating whether a resident meets the criteria for conditional release." The result, the court believed, was that residents remained confined "beyond the time constitutionally justified." Second, the court found that state officials were not releasing low-risk residents into less restrictive housing, and had "not even designed procedures to do so," but were instead imposing an indefinite "release without discharge" condition on those residents. Third, the court found that the director of the department of mental health had "abdicated his duty" to authorize petitions for release of low-risk residents, resulting in "the continued confinement of persons who no longer meet the criteria for commitment."

10

*Id.* at 1166. Before reaching the remedies phase, however, the district court *sua sponte* requested briefing on whether it should reconsider its liability order in light of the Eighth Circuit's intervening decision in *Karsjens*. The district court concluded that the underlying findings in *Karsjens* were materially indistinguishable from those in its own liability order, so it reconsidered that order and rejected the plaintiffs' as-applied constitutional claims, dismissing the action without prejudice. The Eighth Circuit affirmed the dismissal because "the concept of substantive due process does not encompass a fundamental right in having the state officials perform as requested," *id.* at 1167, or, alternatively, because "[t]he deficiencies the district court found in the Missouri program are no more egregious or outrageous than those at issue in *Karsjens*." *Id.* at 1169. With respect to the alternative finding (*i.e.*, that the challenged conduct was not conscience-shocking), the Court also considered the plaintiffs' argument that a "deliberate indifference" standard should apply rather than an "intent-to-harm" standard. The Court of Appeals did not resolve this issue, but simply held that the defendants' actions were not conscience-shocking under either standard. The Court stated:

> [T]he residents argue that the court in *Karsjens* incorrectly applied an intent-to-harm standard for conscience-shocking conduct, and that "deliberate indifference" to liberty is the proper standard. *Karsjens* is not entirely clear on this point. The issue was not raised in briefs before the *Karsjens* panel because the plaintiffs disputed that the conscience-shocking standard applied at all. The *Karsjens* opinion, *id.* at 408, did refer to conduct inspired by "malice or sadism" (language associated with intent to harm), but it also framed the issue as whether the defendants' actions were "egregious or outrageous," a phrase that aligns with the understanding that deliberate indifference involves "patently egregious" conduct. *See Lewis*, 523 U.S. at 850-51, 118 S.Ct. 1708.
>
> The residents submit that a deliberate indifference standard must apply here, because the defendant officials had sufficient time to reflect and deliberate about their actions. They point to the statement in *Lewis* that the deliberate indifference standard "is sensibly employed only when actual deliberation is practical." *Id.* at 851, 118 S.Ct. 1708. The State responds that decisions from other circuits have suggested that something more akin to an intent-to-harm standard may apply when

11

officials, after deliberating, are forced to choose among competing, legitimate interests. *See Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 541-42 (6th Cir. 2008); *Matican v. City of New York*, 524 F.3d 151, 158-59 (2d Cir. 2008); *Schieber v. City of Philadelphia*, 320 F.3d 409, 419-20 (3d Cir. 2003). The State suggests that the need for officials to balance the competing obligations of community safety and proper treatment makes the intent-to-harm standard appropriate here. We need not resolve the dispute over the applicable standard.

We reject the residents' argument because the alleged actions of the defendant officials do not shock the conscience under either standard. There is no showing of malicious or sadistic intent to harm, and what was not "egregious" conduct in *Karsjens*, 845 F.3d at 411, is not "patently egregious" deliberate indifference here. The director's alleged failure to authorize petitions for release does not amount to conscience-shocking deliberate indifference to liberty when a resident may petition a court directly for release and trigger the same type of proceeding on whether commitment is still justified. *See* Mo. Rev. Stat. §§ 632.498.2-.5, .501. The nonexistence of less restrictive housing options, the district court explained, stems largely from inadequate funding. Since at least 2010, state officials have "requested money to be placed in the state's budget for establishing cottages in the community, in order to implement the community reintegration phase," but the governor has not proposed that funding to the state legislature. Those efforts by state officials to secure funding run counter to a conclusion of deliberate indifference by the defendants. *See Cullor v. Baldwin*, 830 F.3d 830, 838-39 (8th Cir. 2016). The district court traced the problem of annual reviewers applying incorrect standards to a lack of legal training. This fault is hardly commendable, but it is insufficient to prove conscience-shocking deliberate indifference to a resident's liberty when the annual review is presented to a state court that is charged with reviewing the matter independently under correct legal standards. As in *Karsjens*, we conclude that the alleged shortcomings in the State's sexually violent offender program do not shock the conscience.

*Id.* at 1170.

In conclusion, the court seriously questions whether Kriz has a fundamental right under the Constitution to receive mental health treatment in a least restrictive environment. But even if such a right does exist, Kriz's Complaint does not include any facts from which it might reasonably be inferred that his continued confinement at LRC is the result of conscience-shocking conduct on the part of any Defendant, either under the "deliberate indifference" standard or the "intent-to-harm" standard. Kriz merely expresses his personal belief that he "is stable enough and ready enough for outpatient treatment" and is "no longer mentally ill and dangerous." (Filing 1 at 3.) Because Kriz had not set forth enough factual allegations to nudge his substantive due process claim across the line from conceivable to plausible, his Complaint is subject to immediate dismissal under 28 U.S.C. § 1915(e)(2).

On its own motion, however, the court will give Kriz 30 days in which to file an Amended Complaint that states a claim upon which relief may be granted. To meet this pleading requirement, Kriz should include relevant facts to support his claim that inpatient treatment is no longer necessary, and should explain in detail what each Defendant has done, or failed to do, to violate Kriz's alleged constitutional right to be discharged from LRC to an outpatient treatment setting. If an Amended Complaint is filed within 30 days, the court will conduct another initial review. Otherwise, this action may be dismissed without further notice.

## IV. MOTION FOR APPOINTMENT OF COUNSEL

Kriz has filed a motion for appointment of counsel (Filing 6). The court cannot routinely appoint counsel in civil cases. In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel." Trial courts have "broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." *Id*. Having considered these factors, the request for the appointment of counsel will be denied without prejudice to reassertion.

## V. CONCLUSION

The court finds upon initial review that Plaintiff's Complaint fails to state a claim upon which relief may be granted, but will permit Plaintiff to file an Amended Complaint. The court will not appoint counsel to represent Plaintiff at this time.

IT IS THEREFORE ORDERED:

1. On the court's own motion, Plaintiff shall have 30 days in which to file an Amended Complaint.

2. Failure to file an Amended Complaint within 30 days will result in the court dismissing the case without prejudice, and without further notice to Plaintiff.

3. If Plaintiff files an Amended Complaint, he shall restate the allegations of the Complaint (Filing 1) and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an Amended Complaint will supersede, not supplement, his prior pleadings.

4. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event he files an Amended Complaint.

5. The clerk of the court is directed to set the following pro se case management deadline: **October 1, 2020**, check for amended complaint.

6. Plaintiff's motion for appointment of counsel (Filing 6) is denied without prejudice to reassertion.

Dated this 1st day of September, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge